CLERK'S OFFICE U.S. DIST. COURT
AT DANVILLE, VA
FILED

JUN 22 2018

JULIA C. DUDLEY, CLERK
BY:  s/ MARTHA L. HUPP
     DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
Danville Division

| | | |
|---|---|---|
| RICKY C., | ) | |
| Plaintiff, | ) | Civil Action No. 4:17-cv-00020 |
| | ) | |
| v. | ) | REPORT & RECOMMENDATION |
| | ) | |
| SOCAL SECURITY | ) | By:   Joel C. Hoppe |
| ADMINISTRATION, | ) | United States Magistrate Judge |
| Defendant. | ) | |

Plaintiff Ricky C., appearing pro se, asks this Court to review the Acting Commissioner of Social Security's ("Commissioner") final decision denying his application for disability insurance benefits ("DIB") under Title II of the Social Security Act (the "Act"), 42 U.S.C. §§ 401–434. The case is before me by referral under 28 U.S.C. § 636(b)(1)(B). ECF No. 12. Having considered the administrative record, the parties' briefs, and the applicable law, I cannot find that substantial evidence supports the Commissioner's final decision. Accordingly, I recommend the decision be reversed and the case be remanded under the fourth sentence of 42 U.S.C. § 405(g) to give the Commissioner another opportunity to explain her ruling.

I. Standard of Review

The Social Security Act authorizes this Court to review the Commissioner's final decision that a person is not entitled to disability benefits. 42 U.S.C. § 405(g); *see also Hines v. Barnhart*, 453 F.3d 559, 561 (4th Cir. 2006). The Court's role, however, is limited—it may not "reweigh conflicting evidence, make credibility determinations, or substitute [its] judgment" for that of agency officials. *Hancock v. Astrue*, 667 F.3d 470, 472 (4th Cir. 2012). Instead, a court reviewing the merits of the Commissioner's final decision asks only whether the Administrative Law Judge ("ALJ") applied the correct legal standards and whether substantial evidence supports the ALJ's factual findings. *Meyer v. Astrue*, 662 F.3d 700, 704 (4th Cir. 2011); *see Riley v. Apfel*,

1

88 F. Supp. 2d 572, 576 (W.D. Va. 2000) (citing *Melkonyan v. Sullivan*, 501 U.S. 89, 98–100 (1991)).

"Substantial evidence" means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). It is "more than a mere scintilla" of evidence, *id.*, but not necessarily "a large or considerable amount of evidence," *Pierce v. Underwood*, 487 U.S. 552, 565 (1988). Substantial evidence review takes into account the entire record, and not just the evidence cited by the ALJ. *See Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487–89 (1951); *Gordon v. Schweiker*, 725 F.2d 231, 236 (4th Cir. 1984). Ultimately, this Court must affirm the ALJ's factual findings if "conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled." *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005) (per curiam) (quoting *Craig v. Chater*, 76 F.3d 585, 594 (4th Cir. 1996)). However, "[a] factual finding by the ALJ is not binding if it was reached by means of an improper standard or misapplication of the law." *Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987).

A person is "disabled" within the meaning of the Act if he or she is unable to engage in "any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *accord* 20 C.F.R. § 404.1505(a). Social Security ALJs follow a five-step process to determine whether a claimant is disabled. The ALJ asks, in sequence, whether the claimant (1) is working; (2) has a severe impairment that satisfies the Act's duration requirement; (3) has an impairment that meets or equals an impairment listed in the Act's regulations; (4) can return to his or her past relevant work based on his or her residual functional capacity; and, if not (5) whether he or she can

2

perform other work. *See Heckler v. Campbell*, 461 U.S. 458, 460–62 (1983); *Lewis v. Berryhill*, 858 F.3d 858, 861 (4th Cir. 2017); 20 C.F.R. § 404.1520(a)(4). The claimant bears the burden of proof through step four. *Lewis*, 858 F.3d at 861. At step five, the burden shifts to the agency to prove that the claimant is not disabled. *See id.*

## II. Procedural History

Ricky C. filed for DIB on April 12, 2013, alleging disability from chronic obstructive pulmonary disease ("COPD"), bipolar disorder, knee and wrist problems, ulcers, and high blood pressure. Administrative Record ("R.") 22–24, ECF No. 9. He alleged disability beginning on October 22, 2012, at which time he was fifty years old. R. 22. Disability Determination Services ("DDS"), the state agency, rejected his application initially in June 2013, R. 22–31, and on reconsideration in April 2014, R. 32–43. On September 22, 2015, Ricky C. appeared with counsel for an administrative hearing before ALJ Brian Kilbane, where he testified about his medical conditions, daily activities, and functional limitations. R. 13–17. After ALJ Kilbane mentioned that the record indicated Ricky C. worked until mid-April 2013, Ricky C. and his attorney amended his alleged onset date to April 30, 2013. R. 11–13, 47. A vocational expert ("VE") also testified at this hearing. R. 17–21.

ALJ Kilbane issued an unfavorable decision on November 27, 2015. R. 47–57. He found that Ricky C. had the "following severe impairments: chronic obstructive pulmonary disease, inflammatory bowel disease, and degenerative changes of the lumbar spine with spondylosis." R. 49. Most of Ricky C.'s other diagnosed conditions, including bipolar disorder, the ALJ deemed non-severe medically determinable impairments. R. 49–51. ALJ Kilbane also found at step two that Ricky C.'s anxiety and neuropathy in the feet were "not medically determinable impairments" because those conditions had been diagnosed by a nurse practitioner and not by an

3

"acceptable medical source" such as a physician. R. 51. At step three, ALJ Kilbane found that none of Ricky C.'s severe impairments met or medically equaled any of the impairments listed in the Act's regulations. R. 52.

The ALJ then evaluated Ricky C.'s residual functional capacity ("RFC")[1] based on his medically determinable impairments. R. 53–56. He determined that Ricky C. could perform light work,[2] but could only occasionally climb ladders, ropes, and scaffolds and must avoid concentrated exposure to extreme heat, humidity, fumes, odors, dust, gases, poor ventilation, and hazards. R. 53. This RFC ruled out Ricky C.'s return to his past work as an automotive glass installer. R. 56. Finally, based on this RFC finding and the VE's testimony about Ricky C.'s age, education, and work history, ALJ Kilbane concluded that Ricky C. was not disabled after April 30, 2013, because he could perform certain widely available occupations such as housekeeper, cashier, or sales attendant. R. 57. The Appeals Council denied his request for review, R. 1–4, and this appeal followed.

### III. Discussion

Ricky C. filed a handwritten letter brief explaining why the Commissioner's decision is not supported by substantial evidence or why the decision otherwise should be reversed or the case remanded. Pl.'s Br. 1, ECF No. 14; *see* Order, ECF No. 10. The filing reads in full:

> I . . . would like for the courts to redetermine the decision on my disability case because of (1) I was not represented well by the attorney I had, the judge that day got into a shouting match with the client before me and I don't think he did a fair

---

[1] A claimant's RFC is the most he or she can do on a regular and continuing basis in an ordinary work setting despite his or her medical impairments. 20 C.F.R. § 404.1545(a); SSR 96-8p, 1996 WL 374184, at *1 (July 2, 1996).

[2] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." 20 C.F.R. § 404.1567(b). A person who can meet these lifting requirements can perform light work only if he or she can also "do a good deal of walking or standing, or do some pushing and pulling of arm or leg controls while sitting." *Hays v. Sullivan*, 907 F.2d 1453, 1455 n.1 (4th Cir. 1990).

judgment. I all [sic] was diagnosed with P.A.D. since 2016 and my attorney did
not want to say anything about it in court. I just recently found out I only have a
9th grade education[. I] can't stand or walk on my legs for very long, have
C.O.P.D., bipolar[. P]lease reconsider my case.

Pl.'s Br. 1 (spelling corrected). Most of these grounds merit only a brief discussion.

First and foremost, the Court does not have authority to "reconsider" the Commissioner's

decision, or to award disability benefits based on a fresh, independent review of evidence in the

record. *Meyer*, 662 F.3d at 704. Second, Ricky C.'s allegations about potential procedural

defects in the Commissioner's denial of benefits—like his attorney's performance or the ALJ's

interactions with someone else—are not specific enough for the Court to discern any error that

warrants remand.[3] *Cf. Sims v. Harris*, 631 F.2d 26, 28 (4th Cir. 1980) (noting that the absence of

counsel at an ALJ hearing warrants remand only where it "created clear prejudice or unfairness

to the claimant"); *Carter v. Astrue*, No. 2:11cv665, 2013 WL 1165172, at *8 (E.D. Va. Mar. 20,

2013) (rejecting a procedural challenge where, although "the ALJ's statements during Plaintiff's

hearing were impolite and intemperate, they did not prevent Plaintiff from fully developing the

factual record" or otherwise receiving a fair hearing by an impartial arbiter). Moreover, nothing

in the hearing transcript or other parts of the record supports Ricky C.'s assertion that his counsel

was deficient or that the ALJ treated him unfairly. Finally, Ricky C.'s bare assertions that he has

bipolar disorder and COPD do not warrant reversal because he does not identify any error in the

ALJ's analysis of those medical conditions or their limiting effects on his ability to work, R. 50–

---

[3] Ricky C.'s reason for mentioning that he only has a ninth-grade education is not entirely clear. To the
extent he intended to challenge the ALJ's factual finding about his education level, the allegation is not
"new evidence which is material" to the Commissioner's decision, 42 U.S.C. § 405(g), because ALJ
Kilbane credited Ricky C.'s testimony that he only finished tenth grade, R. 11, in finding that he had a
"limited education," R. 56. *See* 20 C.F.R. § 404.1564(b)(3) ("We generally consider that a 7th grade
through the 11th grade level of formal education is a limited education."). To the extent Ricky C. intended
to allege some procedural defect in the Commissioner's denial of benefits, he does not identify any error
that warrants remand.

51, 53–54. *See Felton-Miller v. Astrue*, 459 F. App'x 226, 229–30 (4th Cir. 2011) (per curiam);

*Hartman v. Colvin*, No. 5:13cv109, 2015 WL 877360, at *7 (W.D. Va. Mar. 2, 2015).

Ricky C.'s assertion that he "can't stand or walk on [his] legs for very long," Pl.'s Br. 1,

is reasonably construed as a challenge to ALJ Kilbane's RFC determination that his severe

lumbar impairment (and resulting back and lower-extremity pain) did not prevent him from

doing "light work," R. 55, which typically "requires a good deal of walking or standing" during

the workday, 20 C.F.R. § 404.1567(b). The Commissioner responds that ALJ Kilbane considered

Ricky C.'s subjective complaints, all of the medical evidence, and Ricky C.'s daily activities in

determining his RFC, and she lists seven reasons why, "[c]ollectively, that evidence supports the

ALJ's RFC assessment."[4] Def.'s Br. 14–15, ECF No. 16. But, ALJ Kilbane did not mention any

of those reasons when evaluating Ricky C.'s back and lower-extremity pain, and, contrary to the

Commissioner's suggestion, this Court must review the ALJ's decision only upon the reasons he

gave. *Bates v. Berryhill*, --- F. App'x ---, 2018 WL 3005123, at *2 (4th Cir. June 14, 2018) (per

curiam) (citing *Patterson v. Bowen*, 839 F.2d 221, 225 n.1 (4th Cir. 1988)).

---

[4] Those reasons are:

> (1) Plaintiff told several providers that he continued to work during the relevant period;
> (2) Plaintiff's treatment was generally conservative, with few changes in medication, no
> physical therapy, no surgical interventions . . . , no use of a TENS unit, and no epidural
> injections; (3) Plaintiff attested in an Adult Function Report that he performs a variety of
> household chores, including lawn mowing and weed trimming; (4) Plaintiff engages in
> numerous recreational activities, including restoring old cars, camping, and fishing; (5)
> diagnostic evidence was largely benign, and shows only moderate disc degeneration and
> spondylosis in Plaintiff's lumbar spine; (6) physical examinations were generally
> unremarkable; and (7) both state agency physicians opined that Plaintiff could perform at
> least light work, and there are no other medical opinions in the record to the contrary.

Def.'s Br. 14–15. In addressing Ricky C.'s COPD symptoms, the ALJ cited Ricky C.'s function report as
evidence that he "is able to perform various household chores despite his alleged breathing difficulties."
R. 54 (citing R. 163–73). Ricky C. did say that he could clean and do laundry as well as perform yard
work for two-hour stints, but the ALJ did not explicitly identify those activities or discuss how this
evidence factored into his assessment of Ricky C.'s back impairment and any related functional
limitations. *See* R. 55.

This Court cannot meaningfully review the Commissioner's denial of benefits unless the ALJ's written decision "explicitly indicates the weight given to all of the relevant evidence" and contains an adequate explanation of the findings and conclusions drawn therefrom. *Gordon*, 725 F.2d at 235–36. The ALJ in this case did not conduct *any* explicit analysis of Ricky C.'s pain when evaluating his RFC, and his discussion of the relevant evidence is so conclusory that I am "left to guess about how the ALJ arrived at his conclusions on [Ricky C.'s] ability to perform relevant functions." *Mascio v. Colvin*, 780 F.3d 632, 637 (4th Cir. 2015). He merely recited the medical evidence related to Ricky C.'s lumbar spine degeneration and the DDS opinions and then concluded that Ricky C. could do light work with additional restrictions on climbing and exposure to hazards. *See* R. 55. Accordingly, "[g]iven the depth and ambivalence of the [evidentiary] record," the decision should be reversed and the case remanded to give the Commissioner another opportunity to explain her ruling. *Radford v. Colvin*, 734 F.3d 288, 296 (4th Cir. 2013).

A.    *The Legal Framework*

A claimant's RFC represents his "maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis" despite his medical impairments. SSR 96-8p, 1996 WL 374184, at *2 (emphasis omitted); *see* 20 C.F.R. § 404.1545. It is a factual finding "made by the Commissioner based on all the relevant evidence in the [claimant's] record," *Felton-Miller*, 459 F. App'x at 230–31, and it must reflect the combined functionally limiting effects of impairments that are supported by the medical evidence or the claimant's credible reports of pain or other symptoms, *see Mascio*, 780 F.3d at 638–40.

The regulations set out a two-step process for ALJs to evaluate a claimant's symptoms. *Lewis*, 858 F.3d at 865–66; 20 C.F.R. § 404.1529; *see also* SSR 96-7p, 1996 WL 374186, at *1

(July 2, 1996), *superseded on other grounds by* SSR 16-3p, 2016 WL 1119029 (Mar. 2, 2016).

"First, the ALJ looks for objective medical evidence showing a condition that could reasonably

produce the alleged symptoms." *Lewis*, 858 F.3d at 866. Second, assuming the claimant clears

the first step, "the ALJ must evaluate the intensity, persistence, and limiting effects of the

claimant's symptoms to determine the extent to which they limit [his] ability," *id.*, to work on a

regular and continuing basis, *see Mascio*, 780 F.3d at 639. "The second determination requires

the ALJ to assess the credibility of the claimant's statements about symptoms and their

functional effects" after considering all the relevant evidence in the record. *Lewis*, 858 F.3d at

866; *see Mascio*, 780 F.3d at 639; *Hines*, 453 F.3d at 565. The ALJ must give specific reasons,

supported by "references to the evidence," for the weight assigned to the claimant's statements.

*Edwards v. Colvin*, No. 4:13cv1, 2013 WL 5720337, at *6 (W.D. Va. Oct. 21, 2013) (citing SSR

96-7p, 1996 WL 374186, at *2, *4–5).

More generally, the ALJ's RFC assessment must "include a narrative discussion

describing" how medical facts and nonmedical evidence "support[] each conclusion," *Mascio*,

780 F.3d at 636, and explaining why he discounted any "obviously probative" conflicting

evidence, *Arnold v. Sec'y of Health, Educ. & Welfare*, 567 F.2d 258, 259 (4th Cir. 1977). This

discussion should "build an accurate and logical bridge from the evidence to [the ALJ's]

conclusion," *Monroe v. Colvin*, 826 F.3d 176, 189 (4th Cir. 2016) (*quoting Clifford v. Apfel*, 227

F.3d 863, 872 (7th Cir. 2000)), that the claimant retains a certain ability to sustain work-related

activities, *Mascio*, 780 F.3d at 636–37. "In other words, the ALJ must *both* identify evidence that

supports his conclusion *and* build an accurate and logical bridge from that evidence to his

conclusion" that the claimant is not disabled. *Woods v. Berryhill*, 888 F.3d 686, 694 (4th Cir.

2018) (quotation marks and brackets omitted). It is not enough for the ALJ simply to recite the

relevant evidence if he then "fails to engage in any discussion as to how th[e] evidence supports"
his RFC determination. *Boston v. Barnhart*, 332 F. Supp. 2d 879, 888 (D. Md. 2004).

B.      *Analysis*

        Although Ricky C. initially alleged that COPD and dyspnea on exertion were his most
physically limiting conditions, R. 169–70, 280, he testified at the hearing that chronic pain in his
back and lower extremities made it "hard to walk" and keep his balance, R. 15. He could stand
for at most thirty minutes, and he could not "go very far" because of the pain in his legs. *Id.*
Ricky C. attributed this pain and trouble walking to injuries sustained when he fell into a
manhole. R. 55, 454–55, 474; *see* R. 329–31 (emergency room record and diagnostic imaging for
traumatic injuries sustained from tripping and falling into manhole).

        Medical records from the relevant time show that physicians diagnosed Ricky C. with
mild spondylolisthesis of the lumbar spine, R. 424, lower back pain and bilateral foot pain, R.
463, 473, and peripheral neuropathy, R. 389–94, and that providers routinely prescribed opioid
and narcotic medications to manage his symptoms, R. 303–05, 308, 393, 463–64, 486–87. In
early 2015, Tracy Lange, F.N.P., referred Ricky C. to neurosurgeon John Fraser, M.D., to
evaluate bulging discs in the lumbar spine, as well as chronic pain in both lower extremities. *See*
R. 298–303, 469, 474. On March 11, Dr. Fraser noted that a recent MRI showed degenerative
disc disease with minimal spondylolisthesis at L5-S1, R. 469, and "possible impingement on the
L5 nerve root on the left," R. 474, but nothing "to explain an S1 nerve root compression," R.
487. *See* R. 313–14.

        On March 30, Ricky C. told Dr. Fraser that he had been "unable to walk ever since he fell
in a manhole 2 years ago and broke a number of ribs. His foot pain was initially right-sided, [but]
now bilateral." R. 474. Dr. Fraser opined that this type of pain did "not fit particularly well with

his MRI findings," but "might suggest a neuropathy." *Id.* On examination, Ricky C. could not

walk on his heels or toes and "appear[ed] to show total plegia of dorsiflexion and plantarflexion

bilaterally, but his gait [was] not consistent with" paralysis. *Id.*; *see* R. 259, 296, 299, 302, 305,

308, 330 (normal gait). Dr. Fraser counseled against surgery and recommended "conservative

treatment" with physical therapy and "judicious use" of medications to manage Ricky C.'s

musculoskeletal pain. R. 474. He also thought "it would be reasonable to work him up for

neuropathy with an EMG NCV of both lower extremities." *Id.* The EMG showed "possible S1

radiculopathy," but did not reveal abnormalities requiring surgery. R. 487. On March 31, Ricky

C. told FNP Lange that his pain was "so bad he is up all night . . . and that he took a gabapentin

from a friend . . . [which] took the edge off of his pain." R. 304. On examination, FNP Lange

observed sciatic notch tenderness on the left side, lumbar tenderness, and positive straight-leg

raising tests on the left at about 45 degrees, but a normal gait. R. 305; *see also* R. 299, 302, 308

(same). She diagnosed neuropathy, prescribed gabapentin, and gave Ricky C. samples of Lyrica.

R. 304–05. On April 20, Ricky C. told Dr. Fraser's nurse that he was going to shoot himself in

the leg because maybe then "someone will fix the pain." R. 484–85. Gabapentin was his "only

current medication for this problem." R. 487. On examination, Dr. Fraser noted that Ricky C.

could not "walk on his heels or toes with either foot because he says that when he puts weight on

his feet it feels like he is 'standing on something sharp.'" *Id*. He prescribed physical therapy and

a new medication and told Ricky C. to return "should a new problem come up." *Id.*

    ALJ Kilbane discussed Ricky C.'s physical impairments throughout his written decision.

At step two, he found that Ricky C.'s diagnosed COPD and "degenerative changes of the lumbar

spine with spondylosis" were severe medically determinable impairments because they caused

"significant limitations in [his] ability to perform basic work activities," R. 49, which, according

to the regulations, include standing and walking, 20 C.F.R. § 404.1521(b)(1) (2015). He also

found that "neuropathy in the feet" had been diagnosed by a nurse practitioner, rather by any

"acceptable medical source," and therefore the condition was not a medically determinable

impairment as defined in the regulations, R. 51. *See* 20 C.F.R. § 404.1513(a)(1) (2015). In

making this finding, however, the ALJ overlooked an emergency-room record showing that

attending physician Jinaya O'Neal, D.O., diagnosed Ricky C. with peripheral neuropathy on

September 14, 2014, R. 389, several months before FNP Lange made the same diagnosis, R.

304–05. ALJ Kilbane did not mention neuropathy after step two, and he did not discuss any of

FNP Lange's examination notes when summarizing the medical evidence of Ricky C.'s severe

lumbar impairment and related lower-extremity pain. R. 55. Several of those notes document

abnormal findings on physical examinations, which ALJ Kilbane specifically said were missing

from the medical record. *Compare* R. 52 (concluding that Listing 1.04 was not met in part

"because the record does not demonstrate" any findings of sensory loss or positive straight-leg

raising tests), *with* R. 299, 302, 305, 308 (documenting left-sided positive straight-leg raising

tests and/or diminished sensation in the extremities).

Then, after very briefly summarizing Ricky C.'s testimony, ALJ Kilbane found that

Ricky C.'s "medically determinable impairments could reasonably be expected to cause [his]

alleged symptoms," but that his statements describing the "intensity, persistence, and limiting

effects of these symptoms [were] not entirely credible for the reasons explained in th[e]

decision." R. 53. He cited two specific reasons to question those statements—both of which were

incorporated into his summary of the medical evidence related to COPD and expressly linked to

Ricky C.'s alleged breathing difficulties. *Id.* First, he found that Ricky C. "continued to smoke

cigarettes and marijuana despite his alleged breathing difficulties, which indicates that his

11

allegations regarding shortness of breath and difficulty breathing are not as severe as he alleges."
R. 54 (citing Exs. 2F to 7F, 9F, 15F). He also found that Ricky C. could "perform various
household chores despite his alleged breathing difficulties," *id.* (citing Ex. 6E), but he did not
identify those chores or acknowledge Ricky C.'s caveats that he needed significant breaks of two
hours and that it took him at least two days to finish basic chores, R. 165–66, or that he needed
help to do things around the house and yard, R. 14–15, 166. *See Woods*, 888 F.3d at 694 ("An
ALJ may not consider the *type* of activities a claimant can perform without also considering the
*extent* to which [he or] she can perform them.").

This is the extent of ALJ Kilbane's credibility analysis. R. 53–56. Despite finding that
Ricky C.'s severe lumbar disorder could reasonably be expected to cause debilitating back and
lower-extremity pain, which significantly limited his ability to stand and walk, R. 53, ALJ
Kilbane did not articulate *any* reason why Ricky C.'s statements describing his pain were not
fully credible, R. 53–56. *See Monroe*, 826 F.3d at 189–90. Yet, ALJ Kilbane also concluded that
Ricky C. could still do work that "requires a good deal of walking or standing," 20 C.F.R. §
404.1567(b). *Cf. Mascio*, 780 F.3d at 640 (reversing and remanding where one of the ALJ's three
stated reasons for discounting the claimant's allegation that severe pain limited her ability to
walk had "nothing to do with pain" and the ALJ did not "explain how he decided" the claimant
could still do light work). Without some explanation of why ALJ Kilbane apparently rejected
Ricky C.'s statements, I cannot conclude that the RFC determination is both legally adequate and
supported by substantial evidence in the record as a whole.[5] *See Mascio*, 780 F.3d at 640; *Hines*,
453 F.3d at 565–66.

---

[5] The Commissioner suggests that ALJ Kilbane "relied on" Dr. Fraser's recommendation of conservative
treatment and the mostly unremarkable findings on physical examinations and diagnostic images in
concluding that Ricky C.'s lumbar impairment was not as debilitating as he had alleged, Def.'s Br. 16–17
(citing R. 55), "but the ALJ's written decision contains none of those justifications," *Bates*, 2018 WL

ALJ Kilbane also did not include a narrative discussion describing how specific medical facts and nonmedical evidence supported his conclusion that Ricky C. could perform light work with additional restrictions on climbing and exposure to workplace hazards. R. 55. Almost his entire discussion of Ricky C.'s lumbar impairment and related functional limitations appears in a single paragraph summarizing FNP Lange's comments about the lumbar MRI (Ex. 6F), and Dr. Fraser's treatment notes (Exs. 11F, 12F):

> The claimant also has degenerative changes of the lumbar spine. A February 2015 MRI of the lumbar spine revealed multilevel lumbar spondylosis with varying degrees of foraminal stenosis (Exhibit 6F). According to the claimant, these injuries were sustained when he fell into manhole (Exhibit 11F). During a neurosurgery exam in March 2015, the claimant was not able to walk on his heels or toes (Exhibit 12F). On direct testing, he appeared to show total plegia of dorsiflexion and plantar flexion bilaterally; however, his gait was not consistent with such (Exhibit 12F). Conservative treatment was recommended and surgery was not recommended (Exhibit 12F). On examination in April 2015, the claimant was unable to walk [o]n his heels or toes with either foot because he said that when he puts weight on his feet it feels like he is "standing on something sharp." In a letter to the claimant's primary care provider, Dr. Fraser indicated that an EMG is reported to show "possible S1 radiculopathy." He goes to note that there is nothing on MRI to explain an S1 nerve root compression (Exhibit 12F). The claimant was diagnosed with bilateral foot pain (Exhibit 12F). Thus, the evidence of record supports the residual functional capacity limiting the claimant to light work with additional restrictions for climbing and hazards.

R. 55. ALJ Kilbane also discussed a DDS physician's April 2014 opinion that, despite being "limited due to COPD/asthma and poorly controlled hypertension," R. 40, Ricky C. could stand and/or walk for about six hours in an eight-hour workday and occasionally climb ladders, ropes, and scaffolds, but should avoid concentrated exposure to extreme heat, respiratory irritants, and hazards. R. 55 (citing R. 40–41). He gave this opinion "great weight" because he found the physician "had an opportunity to review the evidence of record and his opinion [was] consistent

---

3005123, at *2. Fourth Circuit "precedent makes clear that it is not [the court's] role . . . to hypothesize the ALJ's justifications that would perhaps find support in the record." *Fox v. Colvin*, 632 F. App'x 750, 755 (4th Cir. 2015) (per curiam). Accordingly, I will not "engage[] in an analysis that the ALJ should have done in the first instance." *Id.*

with the repeat normal abdominal images." *Id.* ALJ Kilbane then concluded, "[t]he light level
activity with restrictions for pulmonary irritants adequately accounts for the claimant's alleged
COPD symptoms and subsequently diagnosed lumbar spine impairment." *Id.* But, he never
explained *how* he concluded *based on this evidence* that Ricky C. could actually meet the
physical demands of light work. *Woods*, 888 F.3d at 694.

"A necessary predicate to engaging in substantial evidence review is a record of the basis
for the ALJ's ruling. The record should include a discussion of which evidence the ALJ found
credible and why, and specific application of the pertinent legal requirements to the record
evidence." *Radford*, 734 F.3d at 295 (internal citation omitted). A detailed discussion is not
required, *see Reid v. Comm'r of Soc. Sec.*, 769 F.3d 861, 865 (4th Cir. 2014), as long as the ALJ
articulates, "at some minimum level, his analysis of the evidence to allow the [reviewing] court
to trace the path of his reasoning," *Diaz v. Chater*, 55 F.3d 300, 307 (7th Cir. 1995). Here, too
"[m]uch of the ALJ's RFC assessment was devoted to summary and not enough to analysis."
*Lacek v. Colvin*, Civ. Action No. CBD-13-2046, 2014 WL 2865992, at *8 (D. Md. June 23,
2014) (reversing and remanding on these grounds); *see also Boston*, 332 F. Supp. 2d at 888
(reversing and remanding where the ALJ set out "a detailed summary of the medical evidence,
but fail[ed] to engage in any discussion as to how this evidence support[ed] [the] RFC
determination"). Indeed, ALJ Kilbane did not conduct *any* explicit analysis of Ricky C.'s pain
and resulting functional limitations, *Mascio*, 780 F.3d at 639–40, and provided *no* explanation of
how the medical-source evidence he recounted supported his RFC determination, *Woods*, 888
F.3d at 694.

Some of the evidence cited by ALJ Kilbane also seems to support Ricky C.'s subjective
complaints more than it does the ALJ's conclusions about his remaining physical capacities. For

example, evidence that Ricky C. could not walk on his toes or heels because he claims that it

"feels like he is standing on something sharp" whenever he bears weight, R. 55, is arguably more

consistent with Ricky C.'s discredited testimony that he cannot walk "very far" or stand for more

than about 30 minutes because of severe pain in the legs and feet, R. 14–15, than it is with the

DDS physician's credited opinion that he could stand and/or walk for about six hours during an

eight-hour workday, R. 55.[6] ALJ Kilbane did not explain how this evidence nonetheless

supported the conclusion that Ricky C. could do light work and occasionally climb ropes,

ladders, and scaffolds. Nor did he explain how a medical opinion that was consistent with normal

*abdominal* images, which were obtained specifically to evaluate Ricky C.'s inflammatory bowel

disease and recurring abdominal pain, R. 346, 412, 540–42, also adequately accounted for Ricky

C.'s subsequently diagnosed *lumbar spine* disorder and resulting lower-extremity pain. *Cf.*

*Lewis*, 858 F.3d at 869 (reversing and remanding where the ALJ did not explain how evidence

that the claimant consistently walked with a normal gait bore "any nexus to her complaint of

chronic shoulder pain" and alleged upper-extremity limitations). "The ALJ therefore failed to

build an accurate and logical bridge from the evidence he recounted to his conclusion about

[Ricky C.'s] residual functional capacity." *Woods*, 888 F.3d at 694 (quotation marks omitted).

---

[6] This is not to say that the ALJ should have accepted Ricky C.'s testimony as true—only that ALJ
Kilbane failed to explain why, despite having found that Ricky C. produced "objective medical evidence
[of] a condition reasonably likely to cause the pain claimed," his subjective statements did not show that
this pain was "so continuous and/or severe that it prevent[ed] him from working a full eight hour day."
*Hines*, 453 F.3d at 565. That missing explanation was especially important in this case because additional
restrictions on Ricky C.'s ability to stand and/or walk could have supported a conclusion that he was
disabled. *See* R. 18–21 (VE's testimony that reducing the RFC from about six hours standing/walking to
"two hours each, standing and walking, and two hours of sitting" in a normal eight-hour workday "will
eliminate jobs as they exist in full-time competitive work" for a person "closely approaching advanced
age with a limited education"); 20 C.F.R. pt. 404, subpt. P app. 2 § 201.09 (2015) (directing a finding of
"disabled" for a person "closely approaching advanced age" with a limited education and who is
restricted to a full range of sedentary work as a result of a severe physical impairment).

On remand, the Commissioner must consider and apply the applicable legal rules to all the evidence in the record relevant to Ricky C.'s subjective complaints and alleged functional limitations, explain how any material inconsistencies or ambiguities were resolved, and provide a logical link between the evidence she found credible and the RFC determination.

## IV. Conclusion

For the foregoing reasons, I respectfully recommend that the presiding District Judge **DENY** the Commissioner's Motion for Summary Judgment, ECF No. 15, **REVERSE** the Commissioner's final decision, **REMAND** the case for further proceedings under the fourth sentence of 42 U.S.C. § 405(g), and **DISMISS** this case from the Court's active docket.

### **Notice to Parties**

Notice is hereby given to the parties of the provisions of 28 U.S.C. § 636(b)(1)(C):

Within fourteen days after being served with a copy [of this Report and Recommendation], any party may serve and file written objections to such proposed findings and recommendations as provided by rules of court. A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge may also receive further evidence or recommit the matter to the magistrate judge with instructions.

Failure to file timely written objections to these proposed findings and recommendations within 14 days could waive appellate review. At the conclusion of the 14 day period, the Clerk is directed to transmit the record in this matter to the Honorable Jackson L. Kiser, Senior United States District Judge.

The Clerk shall send certified copies of this Report and Recommendation to the pro se Plaintiff and all counsel of record.

ENTER: June 22, 2018

16

Joel C. Hoppe
United States Magistrate Judge